## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. ROACH-MANIGAN PAVING CO. OF TEXAS. (No. 8356.)

(Court of Civil Appeals of Texas. Dallas. April 10, 1920.)

1. **Railroads ⬿348(1)—Evidence held to sustain finding that railroad was negligent in striking team at crossing.**

In an action for the negligent killing of two mules and damage to harness and wagon in a collision with defendant's train at a railroad crossing, conflicting evidence as to whether defendant's employés operating train discovered that plaintiff's team was in danger of being struck in time to have avoided a collision by the use of the means at their command, and failed to exercise reasonable care and diligence to stop the train, *held* to justify a finding for plaintiff.

2. **Trial ⬿260(7)—Charge as to contributory negligence held to embrace refused special charges on same subject.**

In an action for negligent killing of two mules and damage to harness and wagon, sustained in collision with defendant's train at a railroad crossing, wherein contributory negligence on the part of the driver was alleged, an instruction requested by defendant to find for it, if the driver of plaintiff's team was guilty of "negligence in the manner in which he drove or attempted to drive over said crossing," *held* sufficient to require the jury to find whether the evidence established a group of facts on the subject of contributory negligence embraced in refused special charges.

3. **Trial ⬿260(1)—Where charge requested given, refusal of other charges on same subject not erroneous.**

When defendant requests a number of special charges on an issue, and one of them is given, he cannot complain that the others are not given.

Appeal from Hunt County Court; A. J. Gates, Judge.

Action by the Roach-Manigan Paving Company of Texas against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 209 S. W. 182.

E. B. Perkins, of Dallas, and Crosby & Harrell, of Greenville, for appellant.

H. O. Norwood and L. L. Bowman, both of Greenville, for appellee.

TALBOT, J. The appellee sued the appellant for damages in the sum of $500 for the negligent killing of two mules, the property of appellee, and for damages to a set of harness and wagon. The accident occurred at a point where Texas street crossed appellant's railway track in the city of Greenville. The appellee based its right of recovery on the alleged failure of appellant to ring the bell and blow the whistle of its locomotive as required by statute in approaching the public crossing where the accident occurred, the failure of appellant's employés in charge of the locomotive and train to exercise ordinary care to keep a proper lookout for persons about to pass over the crossing, and the failure of said employés, after discovering that the wagon and team were in danger of being struck by the approaching locomotive, to use all reasonable care, consistent with the safety of its train and passengers thereon, to stop the train and avoid the accident, the operation of said locomotive and train at a greater rate of speed in approaching said public crossing and within the corporate limits of the city of Greenville than allowed by an ordinance of said city, namely, more than 6 miles per hour. Appellee alleged that at the time of the accident one of its employés was driving a pair of mules hitched to a gravel wagon upon Texas street in the city of Greenville, going south and approaching a point where said street crossed appellant's track, when one of appellant's passenger trains collided with said team, killing both of them and injuring and damaging the harness and wagon; that at the point where Texas street crossed appellant's track, and for a great distance in both directions from said crossing, appellant's track was in a deep cut, and an embankment of dirt from 14 to 18 feet high was piled up on each side of said track for a distance of about 300 yards west of said crossing, and that trees, bushes, and weeds were growing upon the tops of said embankments, and that said embankments and growth formed an obstruction to the view of one driving south on Texas street, and made it impossible to see a train approaching Texas street until the heads of the mules or horses driven by said person came within a few feet of said track; that appellant's track west of said crossing has a steep downgrade, the incline being from west to east, so that a train approaching said crossing moves by the momentum of its own weight and makes very little noise. Appellee further alleged that on June 12, 1916, it presented a claim of $405 to appellant, and that said claim was rejected, and appellee therefore prayed for the statutory attorney's fees in the sum of $20.

Appellant pleaded a general denial, and contributory negligence on the part of appellee, in that its employé, who was driving the mules at the time of the accident, failed to keep a proper lookout for the approaching train at said crossing, and failed to look in both directions up and down said track before driving his team near and upon the same, and failed to use ordinary care to discover the approaching train. Appellant further pleaded contributory negligence on the part of appellee in failing to have its gravel wagon

---

⬿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

equipped with the proper kind of brakes, or in failing to properly apply said brakes and stop said wagon in time to avoid the accident, and that appellee was further guilty of contributory negligence in that the person in charge of said team at the time of the accident was a young boy of indiscreet years, and too young to be intrusted with driving a pair of mules over and across said railroad crossing, and that said employé had a defect in his hearing, and that it was negligence on the part of appellee to employ said person, and that all of said negligence on the part of appellee and its employé caused or contributed to cause the accident.

The case was tried before a jury and submitted upon a general charge. The jury returned a verdict in favor of appellee for the sum of $405, with 6 per cent. interest per annum from date of accident, and judgment was entered by the court in accordance with said verdict.

The court, after defining ordinary care, diligence, contributory negligence, and proximate cause, submitted in several paragraphs of its charge the issues made by the pleadings, and evidence of whether or not appellant's employés in charge of the train in question were operating said train at the time of the accident at a greater rate of speed than 6 miles per hour, failed to ring the bell upon the engine all the time the engine was in motion in the city of Greenville, failed to sound the whistle of the locomotive at a distance of 80 rods west from the crossing in approaching the same, and negligently failed to keep a lookout for wagons and teams approaching said public crossing, or discovered appellee's team approaching said crossing and "negligently failed to use all reasonable care consistent with the safety of the train, and the passengers thereon, to stop the train and avoid the accident," and instructed them to the effect that, in the event they made an affirmative finding upon said issues, or either of them, to find for the appellee, in such amount as they found appellee was damaged, provided such negligence was the proximate cause of the accident and injury sued for, and appellee's employé in charge of the wagon and team was not guilty of contributory negligence as defined in paragraph 10 of the charge.

The paragraphs of the charge submitting the issues of whether or not the employés of the appellant in charge of the train were operating it at a greater rate of speed than 6 miles per hour at the time the wagon and team were struck, and whether or not said employés failed to ring the bell upon the engine all the time the engine was in motion in the city of Greenville, are complained of on the grounds that they were not authorized by the evidence, are incorrect in law and upon the weight of the evidence, and authorized a verdict in favor of the appellee, or if its employé was guilty of contributory negligence, and directs the jury to find for appellee "such damages as they may find it was damaged by said accident, without giving them any rule or directions to control them in assessing said damages." In addition to the grounds of complaint just stated, the paragraph of the court's charge submitting the issue of whether or not the appellant's employés in charge of the train failed to sound the whistle of the engine at a distance of 80 rods west of the street crossing, as the train approached said crossing, and to keep the bell ringing, is complained of on the further ground that that part of the charge wherein the jury are instructed as to the duty of the appellant to have kept the bell ringing all the time the locomotive was traversing said 80 rods, etc., was a repetition, and gave too great a prominence to that ground of negligence alleged, and was misleading to the jury and injurious to the appellant's rights, in that the jury would be led to believe that appellant failed to ring the bell and that such failure was the proximate cause of the injury. Neither of the paragraphs of the court's charge attacked furnishes any ground for a reversal. Each of them was applicable to the facts and embraced substantially correct propositions of law. The jury was authorized by them to return a verdict in favor of the appellee only in the event they found that the driver of appellee's team was not guilty of contributory negligence, 'and were given in a separate paragraph of the charge, which was sufficient, the measure of damages applicable to the facts of the case, and the rule by which they should be guided in assessing the damages sustained by appellee. It was not necessary that this rule and measure of damages be embraced in each paragraph of the charge assailed.

Complaint is made of the following paragraph of the court's charge:

"If you find from the evidence that defendant, its servants or employés, while operating the train negligently failed to keep a lookout for wagons and teams approaching its track upon Texas street, or if you find that defendant's servants or employés kept a lookout and did discover plaintiff's team approaching defendant's track, and coming into the cut ahead of the moving locomotive from behind physical objects, if any, that prevented the driver from seeing the locomotive, and if you find that such servants and employés negligently failed to use all reasonable care, consistent with the safety of its train and the passengers thereon, to stop the train and avoid the accident, and if you find that such negligence on the part of defendant's employés and servants was the proximate cause of the injury sued for, you should find for the plaintiff, for such amount as you may find it was damaged by such negligence, unless you find from the evidence the plaintiff or its employé was guilty of contributory negligence as would not entitle it to recov-

er, as defined in paragraph 10 of this charge, in which event you will find for defendant."

It is contended that this charge was not authorized by the facts, was confusing and upon the weight of the evidence, and incorrect law; that especially that part of the charge wherein the jury was instructed, "or if you find that defendant's servants or employés kept a lookout and did discover plaintiff's team approaching defendant's track, and coming into the cut ahead of the moving locomotive from behind physical objects, if any, that prevented the driver from seeing the locomotive, and if you find that such servants and employés negligently failed to use all reasonable care, consistent with the safety of its train and the passengers thereon, to stop the train and avoid the accident," and same "was the proximate cause of the injury," to "find for plaintiff," was erroneous, because there was no evidence tending to show that said employés did not use reasonable care or that said train could have been stopped in time to avoid the accident, and because the court in said charge assumes that the train was approaching the track into a cut ahead of the locomotive and from behind physical objects that prevented the driver from seeing the locomotive, and is therefore upon the weight of the evidence, etc. There was evidence which authorized the giving of this charge, and it does not, in our opinion, assume the existence of any of the facts grouped in it. The jury was by its language required to find the existence of the facts therein enumerated, and told, in effect, that if they did exist, and were the proximate cause of the injury complained of, and the driver of appellee's team was not guilty of contributory negligence, to find for the appellee; otherwise, to find for the appellant.

[1] Upon the issue of whether or not appellant's employés operating the train discovered that appellee's team was in danger of being struck by the train, in time to have avoided the collision by the use of the means at their command, and failed to exercise reasonable care and diligence to stop the train and avoid the injury, the evidence is conflicting, but sufficient, it occurs to us, to justify an affirmative finding upon it. It is undisputed that the train as it approached the street crossing was running 18 or 20 miles an hour, in violation of an ordinance of the city of Greenville, and the evidence warrants the conclusion that, because of an embankment and trees growing upon it, the view of the boy who was driving appellee's team was at least partially obstructed, and he probably could not see the approaching train until it was very near the crossing: that neither of the signals required by statute was given by the operatives of the train, and that they well knew that persons were constantly using the crossing. The testi-

mony further shows that the fireman on the engine was sitting on the left side of the engine "looking ahead," and that appellee's team was about 60 feet from and moving toward the railway track at the crossing when he first saw it; that at this time the train was running 20 miles an hour and distant from the crossing 75 or 100 yards; that the fireman did not tell the engineer, who was sitting on the right side of the engine, of the approaching team when he first discovered it, but waited to do so, thinking the team would be stopped before going on the railway track, until the train, according to the testimony of the engineer, had approached to within about 45 feet of the team and crossing. The engineer said:

"At the time the fireman of this train hollered to me to look out for the team, and I applied the brakes, I guess that I was within 45 feet of the team. He [the fireman] hollered, 'Look out!' and I didn't know what was coming up, and didn't ask, but I applied my brakes and looked then, and sounded the stock alarm. When the fireman hollered to me to look out, I was within 45 or 50 feet of the team."

Thus it appears that the fireman, who had discovered the team approaching the track, and who testified to nothing that could be construed as indicating to him that the team would be stopped before going on the railway track, suffered the train to run from 75 to 100 yards distant from the crossing to within 45 feet or 50 feet of it, before he notified the engineer of the approaching team and its danger of being struck by the train, and before anything whatever had been done to stop it or reduce its speed. It was the duty of those operating appellant's train, when they discovered that appellee's team was in danger of being struck by it, to use at least reasonable care to stop the train and avoid the accident, as required by the charge, and the failure to do so would be negligence. It was not necessary to sustain the charge of negligence on the part of the appellant in this respect that the operatives of its engine and train actually knew or realized that injury would result to the mules if the train was not stopped. The duty to exercise the care as above stated arose when they discovered that they were in a position of such danger as that they would probably be injured if the train was not stopped. Whether they discharged this duty was a question of fact raised by the evidence, for the determination of the jury, and it was certainly submitted as favorably to appellant by the charge under consideration as it had a right to demand. The evidence does not show, conclusively, as is in effect contended by the appellant, that the operatives of the engine in question did use reasonable care to stop the engine and the train and avoid the accident.

[2, 3] There was no error in refusing to

give the appellant's special charges Nos. 8, 10, 12, 18, and 22. These charges, together with special charge numbered 21, requested by appellant, related to and were asked upon the issue of contributory negligence. The court gave a general charge, on that issue, and in addition thereto gave said special charge numbered 21, and the appellant cannot complain that the others were not given. The special charge selected from the number requested and given instructed the jury that it was the duty of the driver of appellee's team to use ordinary care in driving or attempting to drive over the crossing in question, and that if they believed from the evidence that the driver was guilty of negligence in the manner in which he drove or attempted to drive over the crossing, and that said negligence, if any, caused or contributed to cause the accident, to find for the appellant. The language of this charge, to the effect, "that, if the driver of appellee's team was guilty of negligence in the manner in which he drove or attempted to drive over said crossing, etc., was sufficient, it occurs to us, to require the jury to find whether the evidence established the group of facts on the subject of contributory negligence embraced in the refused special charges, and it is well settled in this state that, when the defendant requests several special charges on contributory negligence, the court need not select the one most favorable to him; but, either being given, he may not complain of the refusal of the others, though the one given be less favorable than he would be entitled to on the issue. In other words, when the defendant requests a number of special charges upon an issue, and one of them is given, he cannot complain that the others were not given. Railway Co. v. Ford, 118 S. W. 1137; Railway Co. v. Ochiltree, 127 S. W. 584; Railway Co. v. Green, 135 S. W. 1031; Greenville v. Branch, 152 S. W. 478; Railway Co. v. Harris, 120 S. W. 500; Van Zandt-Moore Iron Works v. Axtell, 58 Tex. Civ. App. 353, 126 S. W. 930. It is true the fact that one requested instruction grouping certain facts relied on as showing contributory negligence was given by the court does not preclude a defendant from complaining of the refusal to give another or others, including other and different facts relied upon; but that rule does not apply here, for the reason that the appellant's requested charge, given in this case as indicated above, required a finding as to whether the evidence established any or all of the facts enumerated in the several special charges refused.

What we have said disposes of all of appellant's assignments of error, and because we believe none of them points out reversible error the judgment is affirmed.

Affirmed.