## MARYLAND CASUALTY CO. v. DONNELLY et al.

### No. 1169.

Court of Civil Appeals of Texas. Waco.

April 21, 1932.

Rehearing Denied May 26, 1932.

Joseph W. Hale and E. B. Burleson, both of Waco, for appellant.

Bryan, Maxwell & Dardnne, of Waco, for appellees.

ALEXANDER, J.

This is a workman's compensation case. Donnelly is the injured employee, and Meriwether was alleged to be the employer, and the Maryland Casualty Company the insurer. Maryland Casualty Company brought the suit to set aside the award of the Industrial Accident Board, and Donnelly reconvened for the compensation alleged to be due him. The verdict of the jury was favorable to the employee, and the insurer appealed.

The appellant contends that the court should have given an instructed verdict in its behalf because there was no evidence introduced to prove that it was the insurance carrier. After the jury had been impaneled and before the introduction of the evidence proper

was begun, the jury was retired, and the appellant, for the purpose of showing jurisdiction, introduced the award of the board wherein it was recited that Meriwether was a subscriber to the employers' liability law through and by virtue of a policy of compensation insurance carried by the Maryland Casualty Company. The appellees, in the absence of the jury and for the purpose of showing jurisdiction, introduced without objection a certified copy of a notice from Meriwether to the Industrial Accident Board that he had become a subscriber and that Maryland Casualty Company was the carrier. This notice was not signed by Maryland Casualty Company. Appellee likewise introduced copies of notice of injury dated April 5, 1929, one copy of which was sent by Donnelly to Maryland Casualty Company and the other to Industrial Accident Board. The appellant contends that this evidence cannot be considered because it was introduced in the absence of the jury and for the purpose of showing jurisdiction only. However, the appellant later introduced before the jury a second notice of injury from Meriwether to the Maryland Casualty Company of date May 4, 1929, notifying it of the injury to the appellee. The report was made out on blank forms bearing the letterhead of the appellant. Meriwether testified that the report was made out by a Mr. Fuller, who was in the service of the insurance company. Fuller had the report made out at the time he presented it to Meriwether for his signature. Meriwether further testified that he signed a report of the injury for Dr. Pope, who treated appellee, to enable the doctor to collect his fee from the insurance company, and that he made out the report of the injury of date April 5, 1929 (being the one introduced before the court in the absence of the jury), and that a copy thereof was sent to the Industrial Accident Board and the other copy to Maryland Casualty Company.

The Commission of Appeals, in the case of Barron v. Texas Employers' Ins. Ass'n, 36 S.W.(2d) 464, par. 9, held that very slight evidence is sufficient to establish that the insurance company sued was the carrier, where it fails to introduce any evidence in denial thereof. In that case the facts were very similar to the facts of this one. The evidence showed that a report of the injury was made out by the employer stating that the insurance was carried by the company sued; one copy thereof was sent to the Industrial Accident Board and the other copy to the insurance company; the board notified the company that a claim had been filed and the company acknowledged receipt thereof, and stated that it was investigating the claim. The court held such evidence sufficient as against a request for an instructed verdict. The evidence in the case at bar is as strong as the evidence in the case cited. Here, in addition to the notice sent by Meriwether to the Industrial Accident Board as introduced before the court without objection showing that the appellant was the carrier, we have evidence before the jury that the appellant was twice notified of the injury, once by Donnelly and once by the employer, and that its representative was investigating the claim and procuring statements with reference thereto. It introduced no evidence whatever to show that it was not the carrier. We therefore hold that the trial court correctly refused to give the instructed verdict as requested. See, in this connection, Texas Employers' Ins. Ass'n v. Perry (Tex. Civ. App.) 35 S.W.(2d) 1087 (writ ref.); Independence Indemnity Co. v. Polk (Tex. Civ. App.) 14 S.W.(2d) 330; Texas Employers' Ins. Ass'n v. Beckworth (Tex. Civ. App.) 42 S.W.(2d) 827.

The appellant contends that there was no evidence sufficient to raise a question of fact for the jury showing that Donnelly was an employee of Meriwether, the contractor. Meriwether entered into a contract with Borden Milk Company to erect a milk plant at West, Tex. One Busby was engaged in the transfer business and Donnelly was one of his employees. Meriwether purchased a carload of steel to be used in the erection of the plant, and upon its arrival at West, Busby was employed to unload it and deliver same at the south end of the plant. At that time on account of wet weather and muddy roads, Busby was unable to reach the plant with the steel and was compelled to unload it on the interurban right of way, about 150 feet from the plant. On the day of the injury Meriwether's foreman notified Busby to move the steel to the plant. Donnelly and others were employed by Busby to assist him in doing the work. When Busby and Donnelly arrived at the plant with a load of steel, Meriwether's foreman concluded to place the steel inside the building. Some of Meriwether's regular employees assisted in doing the work. The workmen, including Donnelly, moved one of the steel I-beams into the building and placed it in position on top of the framework where it was to become a part of the building. While attempting to unload another piece of steel from the truck and move it into the building, the piece of steel fell and crushed Donnelly's leg. The foreman instructed Donnelly, Busby, and others how to unload the steel and how to get it into the building. He told them it was too heavy to carry and to use his skids and rollers to get it into the building and his block and tackle to put it into place. He instructed the workmen what portion of the steel to move first and how to move it. Meriwether, who was called as a witness for appellant, testified that the placing of the steel in the building was a necessary part involved in the construction thereof and that he had the right and authority to discharge Busby and Donnelly if they had failed to follow the directions of himself or

his foreman as to the manner and method of placing the steel in the building. The foreman testified that Busby was working under his control and supervision in moving the steel, and that if Busby, Donnelly, and the other workmen had not handled the steel as directed by him, he could have reported the matter to Meriwether and that Meriwether would have had the right to put Busby off the job. Donnelly testified to facts showing that he thought he was working under the direction of Meriwether's foreman in unloading the steel. Busby was paid $10 for moving the steel. Donnelly was not paid any wages directly by Meriwether. While, under the above state of facts, Donnelly was originally an employee of Busby and Busby was an independent contractor employed to unload the steel and move it to the south end of the building, it appears that after the steel arrived at the building, the foreman added another condition to the contract and required that the material be moved into the building and put in place where it was to be used, and that he assumed and exercised control and supervision over the men who were doing the work.

■■ There are many elements to be considered in determining whether one in performing a service is an employee or an independent contractor, but the most important element to be considered is whether or not the employer has the power or right to control and direct the servant in the material details as to how the work is to be performed. If the employer has the power to control the workmen in the manner in which the work is to be performed, the workman is an employee and not an independent contractor. King v. Galloway (Tex. Com. App.) 284 S. W. 942; Maryland Casualty Co. v. Kent (Tex. Com. App.) 3 S.W.(2d) 414; Texas Employers' Ins. Ass'n v. Owen (Tex. Com. App.) 298 S. W. 542.

The manner in which a person employed is to be compensated, standing alone, is seldom more than of minor importance. Shannon v. Western Indemnity Co. (Tex. Com. App.) 257 S. W. 522, par. 4 (5).

■ The fact that one is casually employed for only a brief period does not mitigate against his right to the benefit of workman's compensation. Oilmen's Reciprocal Ass'n v. Gilleland (Tex. Civ. App.) 285 S. W. 648; Id. (Tex. Com. App.) 291 S. W. 197.

■■ Where one person lends his servant to another for a particular employment and such servant becomes subject to the direction and control of the person to whom he is lent, for anything done in that particular employment he must be dealt with as a servant of the person to whom he is lent, although he remains the general servant of the person who lent him. Judson & Little v. Tucker (Tex. Civ. App.) 156 S. W. 225 (writ ref.); Fink

v. Brown (Tex. Civ. App.) 183 S. W. 46, par. 1 and cases there cited.

It will be seen that while Donnelly was in the regular employment of Busby, who it may be conceded was originally working as an independent contractor to move the steel to the south side of the building where it was to be unloaded, Meriwether's foreman, with Busby's consent, assumed control over Donnelly and the other employees of Busby not only in unloading the steel, but used them to perform extra services in connection with the erection of the building—the moving of the I-beam into the building and placing it in the position where it was to be used—and that while Donnelly was performing such service under the control and direction of the foreman, he was injured. Applying the test outlined in the cases above cited, it will be seen that Donnelly was an employee of Meriwether. There was ample evidence to support the verdict of the jury that he was such employee.

■ The appellee was permitted, over the objection of appellant, to introduce a part of the deposition of Meriwether wherein he testified that at the time he made out a report of the injury for Maryland Casualty Company, he signed a written statement on the back thereof that, "Donnelly was, through Busby, employed by himself at the time of his injury." Meriwether was called as a witness for the appellant and testified in person before the jury that Donnelly was not in his employment at the time of the injury. The evidence complained of was admissible for impeaching purposes. Moreover, this same witness testified later, without objection, that the facts related in the statement complained of were true. While the statement objected to embodied the conclusion of the witness that Donnelly was his employee, the facts with reference to the relation existing between Meriwether and Donnelly were detailed before the jury and the jury could not have been misled by such conclusion. The action of the court in admitting this evidence was not such as to call for a reversal of the case.

As the result of the accident the appellee's right leg was broken near the ankle, but he did not sustain a permanent, total loss of the use of his foot. The jury found that appellee was totally disabled for a period of 47 weeks, and in addition made the following pertinent findings:

"Special issue No. 9: Do you find from a preponderance of the evidence that Felix Donnelly sustained a partial incapacity to labor, if any, immediately following the period of total incapacity to labor, if any? Answer: Yes.

"Special issue No. 10: What do you find from a preponderance of the evidence is the percentage of partial incapacity, if any, immediately following the period of total incapacity, if any, using 100% as a basis of calculation? Answer: 33⅓.

"Special issue No. 10a: Do you find from a preponderance of the evidence that the partial incapacity, if any, immediately following the period of total incapacity, if any, was permanent? Answer: Yes."

"Special issue No. 19: Was the injury sustained by Felix Donnelly on March 26, 1929, a specific injury confined to his right leg? Answer: Yes."

"Special issue No. 21: What percentage, if any, of incapacity to the right leg has resulted from said injury? Answer: 33⅓."

Based on these findings, the trial court allowed a recovery for total disability for 47 weeks and for partial disability of 33⅓ per cent. for an additional 300 weeks.

The appellee contends that since the jury found that his capacity to labor has been permanently reduced 33⅓ per cent., the court properly allowed him to recover as for a general injury for 300 weeks partial disability in addition to 47 weeks total disability. On the other hand, the appellant contends that since the injury was to the limb below the knee, the appellee should be limited in his recovery to a total of 125 weeks for a specific injury to the foot. We are unable to agree with either of these contentions.

 The statute limits the recovery to 60 per cent. of the average weekly wage for a given number of weeks for certain specific injuries named therein. For the total loss of a foot, recovery is limited to 125 weeks, and for a total loss of a leg at or above the knee, recovery is limited to 200 weeks. Revised Statutes, art. 8306, § 12. An employee is not entitled to recover more for a partial loss of the use of a member of the body named in the statute as a specific injury than he would be for the total loss thereof. Hence where the injury is a specific one confined to a member of the body named in the statute and results in a permanent partial inability to labor, the employee is limited in his recovery to 60 per cent. of his average wage, multiplied by the percentage of incapacity, for the maximum number of weeks allowed for a total loss of such member. Petroleum Casualty Co. v. Seale (Tex. Com. App.) 13 S.W.(2d) 364; Texas Employers' Ins. Ass'n v. Maledon (Tex. Com. App.) 27 S.W.(2d) 151; Texas Indemnity Ins. Co. v. Fry (Tex. Civ. App.) 41 S.W.(2d) 679. In those cases where the injury is to a specific member of the body as named in the statute, but by reason of infection, pain or other causes the entire body is involved and the party is partially disabled to labor, he is not confined to a recovery for a specific injury, but may recover under the general provisions of the statute for partial disability for a period of 300 weeks. Texas Employers' Ins. Ass'n v. Moreno (Tex. Com. App.) 277 S. W. 84; Lumbermen's Reciprocal Ass'n v. Anders (Tex. Civ. App.) 292

S. W. 265 (writ ref.); Texas Employers' Ins. Ass'n v. Varner (Tex. Civ. App.) 20 S.W.(2d) 334. For a like reason, where the injury, although originally inflicted to the foot, actually involves the entire leg and no more, the injured employee should be allowed to recover as for a specific injury to the leg. In this case the jury found that the injury was a specific one confined to the leg and that the employee was totally disabled for 47 weeks and thereafter permanently incapacitated 33⅓ per cent. While the injury was inflicted to the lower limb between the knee and the foot and under the statute would ordinarily be classed as an injury to the foot, there was evidence to the effect that the entire leg was involved. The plaintiff so alleged and the jury found that the injury was confined to the leg. No objection was made to the manner of submitting the issue. Hence plaintiff was not limited in his recovery to the number of weeks allowed-for a specific injury to a foot, but was limited to the maximum number of weeks allowed for an injury to the leg, to wit, 200 weeks.

The judgment of the trial court is therefore reformed so as to permit appellee to recover at $10.38 per week for 47 weeks of total disability, and $3.46 per week for 153 weeks of permanent partial disability; and the judgment of the trial court as so reformed is in all respects affirmed.